IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **DOROTHY LOUISE SANFORD,** ) | |
| Plaintiff, ) | |
| vs. ) | No. 3:16-CV-2610-B-BH |
| ) | |
| **CIGNA, MERCER HEALTH AND** ) | |
| **BENEFITS, and JON C. HUNTINGTON,** ) | |
| Defendants. ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

By *Special Order No. 3-251*, this *pro se in forma pauperis* case has been automatically referred for judicial screening. Based on the relevant filings and applicable law, the claims against Cigna, Mercer Health and Benefits, and Jon C. Huntington should be **DISMISSED**.[1]

**I. BACKGROUND**

On September 13, 2016, Texas resident Dorothy Louise Sanford (Plaintiff) filed this *pro se* case against Iowa residents Cigna, Mercer Health and Benefits (Mercer), and Jon C. Huntington (Huntington) (Defendants), arising from the cancellation of two life insurance policies with Cigna, which she had for 22 years. (doc. 3 at 1; doc. 10 at 1-5.)[2] Plaintiff was a participant in the Group Universal Life Program for the Employees of Kraft Foods (Kraft), for which Cigna was the program carrier/underwriter, and Mercer was the administrator. (doc. 3 at 2, 12.) On August 26, 2015, she called Kraft and spoke to a representative "to find out what the grace period was on [her] insurance." (doc. 8 at 2.)[3] She claims that the representative told her that "as long as [she] sent in [her] payment

---

[1] Because the plaintiff's complaint includes copies of her medical reports, as well as other sensitive medical information, the Clerk is **ORDERED** to place docket entry #3 under restricted security access.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[3] The plaintiff's verified answers to a magistrate judge's questionnaire constitute an amendment to her complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

before the end of September, 2015 that everything would be ok." (*Id.*) According to an email between Plaintiff and Huntington, Mercer contended that a transcript of the call reflected that the call center representative correctly told Plaintiff that she had a 61-day grace period, until September 1, 2015, to make her payment before her policies would lapse. (doc. 3 at 52-53.) Plaintiff claims that she received a letter from Kraft in the middle of September informing her that her policies had been cancelled. (doc. 8 at 2.)

Plaintiff claims that on September 29, 2015, she spoke with a representative from Mercer, who advised her that Cigna was conducting an investigation regarding the cancellation of her policies, and to "not to send in any monies toward [her] insurance payments while the investigation was being done." (doc. 3 at 1; doc. 8 at 2.) She alleges that it took Cigna six months to investigate and to eventually provide her with a payment plan to reinstate her insurance policies, but she could not afford it. (doc. 8 at 2.) She claims it "was impossible for [her] to pay to bring the past insurance payments current." (*Id.*) Plaintiff also contends that the recording of her September 29, 2015 conversation with Mercer's representative was "altered" because the instructions she allegedly received from the representative were "cutoff." (*Id.*)

On May 9, 2016, Mercer sent Plaintiff a letter stating that because it had been corresponding with her over a number of months to resolve "the billing issue," her coverage had remained in place. (doc. 3 at 20.) It recognized the potential financial hardship that might be caused by her having to pay the past due amount, and it offered her the option of paying it in 12 monthly installments. (*Id.* at 21-22.) Plaintiff subsequently corresponded with Huntington by email regarding her inability to afford the payment plan because her hours and salary had changed, and she insisted that the recording of the call during which the misrepresentation was made had been altered. (*Id.* at 44-50.)

2

He responded that Mercer had no way to alter calls coming into the call center, and that the recording that had been provided to her was the only one it had relating to the issue. (*Id.* at 50-51.) He also offered to try to negotiate an affordable payment plan for her. (*Id.*)

Liberally construing Plaintiff's complaint, she appears to assert state law claims of negligent misrepresentation claims under the Texas Insurance Code against Defendants. (*See* doc. 3 at 27.) She seeks "$100,000 for paying into premium[s] for 22 years on two policies, plus interest, [and] pain and suffering." (doc. 10 at 1-3.)[4]  No process has been issued.

## II.  PRELIMINARY SCREENING

Because Plaintiff has been permitted to proceed *in forma pauperis*, her complaint is subject to judicial screening under 28 U.S.C. § 1915(e)(2).  It provides for *sua sponte* dismissal of the complaint, or any portion thereof, if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.  A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.

The analysis for determining whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is the same one employed under Fed. R. Civ. P. 12(b)(6). *See Fierro v. Knight Transp.*, No. EP-12-CV-218-DCG, 2012 WL 4321304, at *7 (W.D. Tex. Sept. 18, 2011), slip copy, (citing *Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (per curiam) (applying the same standard of review applicable to dismissals under Rule 12(b)(6) for screening dismissals under § 1915(e)(2)(B)(ii)); *Holt v. Imam*, No. C-07-406, 2008 WL 1782351, at *2 (S.D. Tex. Apr. 17, 2008)

---

[4] Plaintiff has shown that diversity jurisdiction exists over this action.  She also alleges that venue is proper in this district because the "case originated in Texas." (doc. 10 at 5.)

(citing *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (noting that § 1915A(b)(1), § 1915(e)(2)(B)(ii), and Rule 12(b)(6) all employ the same language—"failure to state a claim upon which relief may be granted"). Under Rule 12(b)(6), a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "[P]leadings" for purposes of a motion to dismiss include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196.

"[A] well-pleaded complaint may proceed even if its strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555*; accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.*; *accord Iqbal*, 556 U.S. at 678.

### III. MISREPRESENTATION

As noted, Plaintiff appears to be asserting a claim for misrepresentation against Defendants. Attached to her complaint is a copy of a letter sent by her lawyer to Cigna claiming there were

4

potential violations of the Texas Insurance Code in connection with the initial cancellation of her insurance policies. (doc. 3 at 27.)

**A.     Texas Insurance Code**

When a claim is grounded in fraud, like negligent misrepresentation under the Texas Insurance Code, it is subject to the heightened pleading standards under Rule 9(b). *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009); *Partain v. Mid-Continent Specialty Ins. Servs., Inc.*, 838 F. Supp. 2d 547, 558–59 (S.D. Tex. 2012), *aff'd sub nom. Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388 (5th Cir. 2014).  A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.*, No. 3:10-CV-1747-B, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

Rule 9(b) requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* FED. R. CIV. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010); *see also Potter*, 607 F.3d at 1032. "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997).  Further, "general allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another cannot meet the requirements of Rule 9(b)." *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp. 2d 821, 824 (N.D. Tex. 2001) (quoting *In re Urcarco Sec. Lit.*, 148 F.R.D. 561, 569 (N.D. Tex. 1993), *aff'd sub nom. Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994)).  "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (internal

quotations omitted).

Although Plaintiff does not identify the specific provision the Texas Insurance Code upon which she relies, her allegations most closely align with Section 541.061, which provides:

> It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:
>
> (1) making an untrue statement of material fact;
>
> (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;
>
> (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;
>
> (4) making a material misstatement of law; or
>
> (5) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code.

TEX. INS. CODE ANN. § 541.061 (Vernon 2005).

Here, Plaintiff claims that on August 26, 2015, she was told that as long as her payment was submitted before the end of September, she would be okay. (doc. 8 at 2.) She alleges that she relied on those instructions and waited until the end of September to submit the payment, but Defendants cancelled her policies in mid-September, which was before the alleged payment due date. (*Id.*) She also claims that on September 29, 2015, she was told an investigation was being conducted and to not make any payments during the investigation period. (*Id.*) Again, she contends that she relied on those instructions and did not make any additional payments. (*Id.*)

After Plaintiff disputed the cancellation of her insurance policies, Cigna agreed that there would be no lapse in her coverage and that it would reinstate both policies if she paid all the outstanding premiums that were past due. (doc. 8 at 2; doc. 3 at 36-38.) She was also offered a

6

payment plan to assist her with the payment process. (*Id.*) Plaintiff claims she was not able to afford paying those outstanding premiums because her financial situation had deteriorated. (doc. 8 at 2.)

Although Plaintiff's complaint lays out the "who, what, when, and where," she has not made sufficient allegations to support the "how." See *Benchmark Electronics,* 343 F.3d at 724. She has not alleged how any of the representations made by Defendants caused the cancellation of her insurance policies. See *Hutchins Warehouse Ltd. Partners v. Am. Auto. Ins. Co.*, No. 3:16-CV-3336-G, 2017 WL 588657, at *4 (N.D. Tex. Feb. 14, 2017) (dismissing Texas Insurance Code claims because the allegations of loss were "nothing more than legal conclusions couched as factual allegations" and the plaintiff failed to show how the defendant specifically caused the alleged loss). Although she was ultimately harmed by the cancellation of her insurance policies, that harm resulted from her failure to pay back premiums that were due and owing. She has not alleged a claim with the specificity required by Rule 9. See *Murillo v. Allstate Vehicle*, No. 7:18-CV-208, 2018 WL 3862108, at *2 (S.D. Tex. Aug. 13, 2018) (citing FED. R. CIV. P. 9(b)).

Plaintiff's complaint fails to state a claim for misrepresentation under Section 541.051, or any other provision of the Texas Insurance Code, and these claims should be dismissed.[5]

**B.    Common Law**

Even under the less burdensome requirements for common law negligent misrepresentation, Plaintiff's complaint also fails to support a claim against Defendants. A claim for negligent misrepresentation under Texas law consists of four elements: (1) the defendant made a

---

[5] It is arguable that Plaintiff's allegations regarding the statements by Defendant can be disregarded. As part of her complaint, Plaintiff attached her email exchanges with Huntington showing that he provided her with the transcript of August 26, 2015 call. (doc. 3 at 44-53.) It did not support her version of what the representative said. (*Id.*) Plaintiff's claim that the call was "cutoff" or altered essentially concedes that the recording does not support her claims about what the representative told her. The Supreme Court has held that a plaintiff's version of facts that is blatantly contradicted by video evidence may be disregarded. *Scott v. Harris*, 550 U.S. 372 (2007); *see also Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017) (applying *Scott* in the context of a motion to dismiss where the evidence was attached to the complaint).

7

representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395-96 (5th Cir. 2005)). "The false information complained of in a negligent misrepresentation claim must be a misstatement of an existing fact rather than a promise of future conduct." *DeFranceschi v. Wells Fargo Bank*, N.A., 837 F. Supp. 2d 616, 625-26 (N.D. Tex. 2011) (internal citation omitted).

    1.    ***Huntington***

Despite two opportunities to clarify her claims against Huntington in response to the magistrate judge's questionnaires, (*see* docs. 8, 10), Plaintiff makes no allegations of any representation by Huntington to her, much less a false representation. In email correspondence between her and Huntington, he recounted Cigna's internal investigation, the fact that her coverage had been continued with no break, and its offer to reinstate Plaintiff's life insurance policies upon payment of all outstanding premium payments. (doc. 3 at 44-54). Although he denied her claims that the recording of the call had been altered or deleted, she does not allege that Huntington failed to exercise reasonable care or competence in communicating any information to her. Nor did she identify the pecuniary loss she sustained by relying on any of representations by Huntington. (*Id.*) Plaintiff has failed to state a plausible misrepresentation claim against Huntington upon which relief may be granted, so her claims against him should be dismissed.

    2.    ***Cigna and Mercer***

As for Cigna and Mercer, Plaintiff claims she called "Kraft" on August 26, 2015, and spoke to a customer service representative who told her that she could send in her payment before the end

of September 2015, and "everything would be ok."[6] (doc. 8 at 2.) She then received a letter in the middle of September 2015, informing her that both policies had been cancelled. (*Id.*) Plaintiff subsequently called a customer service representative at Mercer on September 29, 2015, and was instructed "not to send in any monies toward [her] insurance payments while the investigation was being done." (*Id.*)

Although Plaintiff appears to allege that Cigna's customer representative made false statements to her during the conversations on August 26, 2015, and September 29, 2015, her complaint fails to identify the pecuniary losses she sustained by relying on any statements allegedly made by the customer service representatives during either phone call.  Plaintiff alleges that her insurance policies were initially cancelled in September 2015, but she also acknowledges that Cigna was willing to reinstate her policies if she fulfilled her contractual obligations and paid all back and current premium payments that were due and owing. (doc. 8 at 1-9.)  The attachments to her complaint show that Mercer sent her a letter stating that her coverage had remained in place during the investigation of "the billing issue," and it offered her a payment plan to ease any financial hardship. (doc. 3 at 20.)  Although Plaintiff notes that she was told to withhold making payments during the investigation process, she does not explain how such statements are false.  Nor does she allege that she was told the premium payments owed during the investigation period would have been forgiven, or that her obligations under the insurance policies were being modified.  She was only instructed to withhold making premium payments until the investigation was completed. (*Id.*)

Plaintiff also contends that it took Cigna six months to complete its investigation, but she does not allege how she was specifically damaged as a result of that six month duration. (doc. 8 at

---

[6] It is not clear from Plaintiff's complaint if the customer service representative worked for Cigna or Mercer, but that distinction would not change the final outcome in this case.

1-9.) She still fails to explain how she sustained any harm or damages by relying on any statement made, or by not making any payments during the six month investigation period. (*Id.*) Even though Cigna disagreed with Plaintiff's recollection of the September 29, 2015 phone call and denied manipulating or altering the phone recordings, Cigna was ultimately willing to reinstate Plaintiff's insurance policies if she would pay back the premiums owed under a payment plan, and her coverage remained in place during the investigation. (*Id.*; doc. 3 at 20.) To the extent Plaintiff is asserting claims for negligent misrepresentation against Cigna and Mercer, her claims fail and should be dismissed for failure to state a claim. *See Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 734-35 (N.D. Tex. 2011) (dismissing negligent misrepresentation claim for failure to state a claim; finding that the plaintiffs' allegations that the defendant "made false representations" were vague and conclusory and they "failed to plead sufficient facts to show that they relied on these representations to their detriment ... [and] [did] not make allegations of [suffering] pecuniary loss").

Plaintiff's complaint lacks any facts that would support a plausible claim against any of the named defendants; it contains only bare generalized allegations that do not rise above mere labels or conclusions. Despite an opportunity to clarify her claims against the individual defendants in her answers to two magistrate judge's questionnaires, she provided no additional facts to support a colorable claim against the defendants for any representation made to her, for any action involving prior phone recordings, or for any other alleged conduct associated with her life insurance policies.

## IV. RECOMMENDATION

All claims against Defendants should be **DISMISSED** with prejudice under 28 U.S.C. § 1915(e)(2) for failure to state a claim on which relief may be granted.

**SO RECOMMENDED on this 21st day of September, 2018.**

                                                IRMA CARRILLO RAMIREZ
                                                UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                                IRMA CARRILLO RAMIREZ
                                                UNITED STATES MAGISTRATE JUDGE